**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:10cv189**


| | |
|---|---|
| PAMELA COLLINS,            ) | |
|                         ) | |
|         **Plaintiff,**     ) | |
|                         ) | **MEMORANDUM OF** |
|        **vs.**         ) | **DECISION AND ORDER** |
|                         ) | |
| **MICHAEL J. ASTRUE,**   ) | |
| **Commissioner of Social Security,**  ) | |
|                         ) | |
|       **Defendant.**     ) | |
| _____ ) | |


**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

**I.    PROCEDURAL HISTORY**

Plaintiff Pamela Collins filed an application for a period of disability and disability insurance benefits, and Supplemental Security Income on July 6, 2007, alleging that she became disabled as of March 24, 2006. [Transcript ("T.") 129]. The Plaintiff's application was denied initially and on reconsideration. [T. 60-62]. Initial and supplemental hearings were held before Administrative Law Judge ("ALJ") John L. McFadyen on November 13, 2008 and June 11, 2009. [T. 34-50, 24-33]. On August 14, 2009, the ALJ

issued a decision denying the Plaintiff benefits. [T. 10-22]. The Appeals Council accepted additional evidence but denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 1-5]. The Plaintiff has exhausted her available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established. It means

such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401, 91 S.Ct. at 1427).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III.   THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. §§ 404.1520, 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's

physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled.  Id.  Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id.  Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's RFC, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.

## IV.  FACTS AS STATED IN THE RECORD

The Plaintiff, who was 44 years old at the time of her first hearing, last worked in March 2006 in customer service.  A vocational expert testified that this work was semi-skilled and of a medium exertional level as actually performed.  [T. 129, 49].

Plaintiff alleges that fatigue, pain, fibromyalgia, anxiety, depression, bilateral knee problems, and asthma disable her.  She testified that her fatigue

and low energy prevent her from some daily activities, although she does perform some daily chores. She stated that she can sit for only 30 minutes at a time, walk for up to one hour, and stand for up to ten minutes. [T. 42-43, 47]. She further reported that depression limits her concentration. [T. 48].

## V.   THE ALJ'S DECISION

On August 14, 2009, the ALJ issued a decision denying the Plaintiff benefits. [T. 10-22]. Proceeding to the sequential evaluation, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since March 24, 2006, the alleged onset date. [T. 19]. The ALJ then determined that Plaintiff had the following combination of severe impairments: fibromyalgia, mild arthritis of bilateral knees, asthma, depression, and anxiety. [T. 20]. The ALJ concluded that the Plaintiff's impairments did not meet or equal a listing. [T. 20]. He then determined that Plaintiff retained the residual functional capacity (RFC) to perform a full range of simple repetitive work in a clean but not sterile environment. [T. 20]. He found that Plaintiff was unable to perform her past relevant work, but that considering her age, education, work experience, and residual functional capacity, jobs existed in significant numbers in the national economy that Plaintiff could perform. [T.

21].  Accordingly, he concluded that the Plaintiff was not disabled from March 24, 2006 through the date of his decision.  [T. 22].

## VI.   DISCUSSION

Plaintiff challenges the ALJ's assessment of both her mental and physical RFC.  As discussed below, the Court finds no error.

### A.   The ALJ's assessment of Plaintiff's physical impairments followed applicable law and is supported by substantial evidence.

Plaintiff assigns error to two aspects of the ALJ's determination of her physical RFC for light work in a clean but not sterile environment.  Specifically, Plaintiff challenges his weighing of the medical opinion evidence and his assessment of her credibility.

#### 1.   Weighing of medical opinion evidence

Regardless of its source, the ALJ must consider every medical opinion received.  See 20 C.F.R. § 404.1527(d).  In so doing, the ALJ must weigh:

> (1) the examining relationship (more weight to an examining than a non-examining physician); (2) the treating relationship (more weight to treating than consultative sources); (3) supportability (whether the report is based on detailed findings or merely conclusory); (4) consistency (internally and compared to the record as a whole); (5) specialization (whether the source is board certified or whose qualifications are suspect); and (6) "other factors" (unspecified).

<u>Vest v. Astrue</u>, No. 5:08-00219, 2009 WL 899418, at *5 (S.D. W.Va. Mar. 31, 2009).

In the present case, medical source evidence of the Plaintiff's physical RFC is found in the records of her treating physicians Billie A. Shepherd, M.D. of Community Family Practice [T. 254-84], Emily Diznoff, M.D. [T. 197, 457-64], and Najeob Ghaussy, M.D. [T. 523-28]; the evaluations of non-examining State Agency consultants E. Woods, M.S. M.D. [T. 360-67] and Ebosele X. Oboh, SDM[1] [T. 313-20]; and the testimony non-examining consultant Theron Blickenstaff [T. 30-31].

Plaintiff was being treated by Dr. Shepherd at the onset of her alleged disability. Plaintiff consistently complained to Dr. Shepherd of severe fatigue. She reported that she could not tolerate going to the grocery store or doing household chores. [T. 258]. She had no depressive or overwhelmed thoughts [T. 266, 270], but it was noted that her attention span was short. [T. 258]. Her asthma was noted to be well-controlled. [T. 261]. A wide variety of tests seeking to diagnose her complaints were negative, except for obstructive sleep apnea, for which she used a C-PAP machine. [T. 276-84, 207-08]. Dr. Shepherd considered fibromyalgia, with fatigue as its chief

---

[1]"SDM" stands for "Single Decision Maker," an agency reviewer with no medical credentials.

symptom, to be a possible explanation for Plaintiff's symptoms. [T. 258]. Plaintiff initially resisted taking Cymbalta [T. 263] but ultimately took the medication, which helped. [T. 259]. Dr. Shepherd encouraged exercise and weight loss, and referred her to physical therapy. [T. 256, 260]. He further noted that Plaintiff benefitted from physical therapy for her neck, arm and wrist symptoms, and she was encouraged to keep attending. [T. 215].

Upon Dr. Shepherd's referral, Dr. Ghaussy, a rheumatologist, treated Plaintiff for pain from 2006 through 2009. At her initial consultation visit, Plaintiff reported taking Zoloft, Singulair, Albuterol, Flovent and Protonix for her various conditions. [T. 240]. He prescribed Skelaxin, Cymbalta, and a TENS unit, which helped. [T. 234, 229, 226]. She consistently complained of fatigue. Testing was negative for any objective causes of her pain. [T. 249, 242].

Dr. Ghaussey repeatedly recommended good exercise and sleep habits. [T. 224, 234, 238]. Plaintiff's compliance with exercise, however, was inconsistent. In late 2007, it was noted she was walking two days per week and was benefitting from water therapy. It was further noted that her pain had improved and fatigue was her major symptom. [T. 322, 330]. By 2008, however, she claimed that water therapy was not helping and she had

8

stopped exercising.  [T. 442].  In April 2009, it was noted that she was still not exercising.  [T. 439].

Plaintiff's statements about medications were also inconsistent.  She changed and discontinued medications many times over the course of her treatment with Dr. Ghaussy, even though she acknowledged that certain medications worked for her.  In 2008, she was taking less pain medication than recommended [T. 445].  In 2009, she reported that Zoloft was not helping with her anxiety.  [T. 439].  Medication records, however, only show five 30-day prescriptions filled for Zoloft, in May 2006 [T. 394], June 2008 [T. 399], October 2008 [T. 452], December 2008 [T. 453], April 2009 [T. 455].

In 2007, Plaintiff switched primary care providers, establishing care with Dr. Emily Diznoff.  Dr. Diznoff treated the Plaintiff six times between June 15, 2007 and June 18, 2008 for fibromyalgia and fatigue.  Plaintiff reported that she was not depressed.  [T. 341].  Dr. Diznoff switched Plaintiff from Cymbalta to Celexa, due to cost, in August 2007.  Yet in November, it was noted that Plaintiff was still taking the Cymbalta at Dr. Ghaussey's urging.  [T. 340].  She claimed to have been treating depression with Zoloft, but medication records indicate that she had not had a prescription filled for Zoloft for six months prior

to that date.[2]  [T. 30, 432, 399].  On July 3, 2008, she had stopped taking Lyrica and did not ask for an alternate medication.  [T. 431].

On May 22, 2009, a year after she last saw the Plaintiff for her chronic conditions, Dr. Diznoff opined to disabling mental and physical impairments. [T. 457-64].  She acknowledged, however, that the only basis for this opinion was Plaintiff's "self-reporting," and that fibromyalgia was a "very subjective diagnosis with much of symptoms and diagnosis based on patient self reporting."  [T. 458, 461].  Likewise, her treatment records show no objective basis for that opinion.

Sometime after May 14, 2009, Dr. Ghaussy partially filled out a disability opinion questionnaire provided by Plaintiff's counsel.  [T. 523-24].  He found that Plaintiff had "frequent, severe depression, anxiety, irritability, mood swings, significantly decreased concentration and memory, poor pace and persistence and severe difficulty sleeping."  The only objective evidence he provided in support of this was "[history] of fibromyalgia."  He did not indicate the duration of these problems.  As to physical impairments, he declined to opine on most, noting that he was "unsure on details."  [T. 526-28].

---

[2]Similarly, on April 4, 2009, Plaintiff told Dr. Ghaussey that Zoloft was not helping, but her medication records show that she had not had a prescription filled for it since December 2008. [T. 28, 439, 453].

Ebosele X. Oboh, SDM performed a physical residual functional capacity assessment (RFC) on Plaintiff for Disability Determination Services (DDS) on October 10, 2007. [T. 313-20]. Oboh found the Plaintiff capable of "medium work with limitations." [T. 320].

On February 22, 2009, medical consultant E. Woods, M.S. M.D. performed a physical RFC assessment for DDS. Woods reviewed many records, including Oboh's report, before finding the Plaintiff capable of medium work avoiding fumes, odors, dusts, gases, and poor ventilation. [T. 360-67].

The last medical source to provide an opinion regarding Plaintiff's limitations was Dr. Blickenstaff, who testified at the ALJ hearing. While portions of Dr. Blickenstaff's testimony were inaudible and thus not capable of being transcribed, the record reflects that he opined that Plaintiff should be limited to working in a clean, but not necessarily sterile, environment, and to lifting twenty pounds frequently and forty pounds occasionally. [T. 30-31].

Plaintiff's chief complaint is that the ALJ erred in failing to mention Dr. Diznoff's opinion. While an ALJ's failure to consider an entire line of evidence may be error, see Diaz v. Chater, 55 F.3d 300, 307 (7th Cir. 1995), any error in this case was at most harmless. Dr. Diznoff conceded that her opinion was

based on nothing but Plaintiff's subjective complaints. Because Dr. Diznoff's opinion lacks objective support, the ALJ would not have erred in rejecting her conclusions. Thus, the ALJ's failure to consider explicitly Dr. Diznoff's opinion does not require remand in this case. See DeWalt v. Astrue, No. 9:08-3936-HFF-BM, 2009 WL 5125208, at *8 (D.S.C. Dec. 28, 2009) (noting that an error which has no practical effect on case's outcome does not serve as basis for reversal).

Plaintiff also complains that the ALJ erred in weighing Dr. Ghaussey's opinion. The ALJ rejected Dr. Ghaussey's opinion because it was incomplete and inconsistent with his own records. [T. 19]. Dr. Ghaussy's May 14, 2009, opinion largely consisted of statements and summaries that were prepared by Plaintiff's counsel. [T. 523-24]. Moreover, Dr. Ghaussy's underlying treatment notes do not support the summary conclusions in his opinion. These treatment notes reflect that during the relevant time period Plaintiff was in no acute distress, in good general physical condition, tolerated her medication well, and was encouraged to start a regular exercise program. [T. 440-50]. On physical examination, it was consistently noted that Plaintiff had good range of motion and no synovitis. [T. 440, 443, 446, 449]. Accordingly,

the ALJ did not err in declining to afford Dr. Ghaussy's May 14, 2009 opinion controlling weight.

Plaintiff argues that because the ALJ failed to properly weigh Dr. Ghaussy's opinion, the Commissioner's decision should be remanded pursuant to this Court's holding in Miller v. Astrue, No. 3:09-CV-351-RJC-DCK, 2010 WL 4977063, at *4-5 (W.D.N.C. Nov. 10, 2010). Miller, however, is distinguishable from the present case. Unlike in Miller, the ALJ herein discussed Dr. Ghaussy's opinion and stated his reasons for rejecting it. As such, remand of this case is not required under Miller.

### 2.    Credibility determination

Next, Plaintiff complains of the credibility assessment afforded her by the ALJ. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) . . .which could reasonably be expected to produce the pain or other symptoms alleged." Craig v. Chater, 76 F.3d 585, 594 (4th Cir.1996). If there is such evidence, then the ALJ must then evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects his ability to work." Id. at 595; see 20 C.F.R. § 416.929(c)(3)(i-vi).

In the present case, the ALJ found fibromyalgia and mild arthritis of both knees [T. 20], which are capable of causing the symptoms she claims. He considered Plaintiff's mother's lay statement that showed that Plaintiff had no substantial mental limitations and that she engaged in significant physical activities of daily living. [T. 13]. He noted Plaintiff's own comments to doctors about medications and physical therapy helping, and her inconsistency in claiming and disclaiming mental limitations. He recognized that the doctors' recommendations for exercise were inconsistent with a finding of disabling physical limitations, and that she failed to comply with these recommendations. He also noted that Plaintiff's problems from asthma were minimal, even though she initially claimed that this condition was disabling. [T. 13-15]. The ALJ also adopted Dr. Blickenstaff's testimony, where he noted that Plaintiff's claimed use of medications was inconsistent with the medical records. [T. 28, 30]. "In considering the credibility of the claimant's subjective allegations of pain, the ALJ must consider (factors which include) the extensiveness of the attempts (medical or nonmedical) to obtain relief...." McKenney v. Apfel, 38 F.Supp.2d 1249, 1259 (D. Kan. 1999) (citing Hargis v. Sullivan, 945 F.2d 1482, 1490 (10th Cir. 1991)). Although the ALJ's one-sentence reference [T. 21] to Plaintiff's hearing testimony [T. 37-49] was

distressingly minimal, Plaintiff does not point to testimony that detracts from the ALJ's analysis and findings.

"Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." <u>Shively v. Heckler</u>, 739 F.2d 987, 989 (4th Cir. 1984). The Court finds that the ALJ's credibility analysis followed applicable law and was supported by substantial evidence.

For these reasons, the Court determines that the ALJ did not err in either weighing the medical opinion evidence regarding Plaintiff's physical impairments or assessing Plaintiff's credibility. Therefore, these assignments of error are overruled.

**B.    The ALJ's assessment of Plaintiff's mental impairments followed applicable law and is supported by substantial evidence.**

Plaintiff also assigns error to the treatment of the evidence regarding her mental impairments. She alleges that the ALJ provided inadequate findings in support of his application of the "special technique" used to assess the severity of her mental impairments; that the ALJ failed to evaluate whether her mental impairments met or equaled a listed impairment; that the ALJ failed to

account for her mental limitations in his RFC finding; and that the ALJ erred in weighing the medical opinion evidence regarding her mental impairments.

The record in the present case displays minimal psychological treatment. Plaintiff sought treatment from Licensed Clinical Social Workers Burgin and Davis. [T. 368-73, 291-294]. She further underwent three consultative examinations: those by Dr. Barnett for the State Agency, and by Drs. Marcus and Hinnant. [T. 287-90, 400-20, 511-22]. Two Psychiatric Review Techniques (PRT) and Mental Residual Functional Capacity Assessments (MRFC) were performed by non-examining State Agency physicians, Drs. Skoll and Fox. [T. 342-359, 295-312]. Another non-examining physician, Dr. Schacht, testified at the request of the ALJ.

Mental impairment evidence must be analyzed pursuant to the "special technique" set out at 20 C.F.R. § 404.1520a. It requires discrete considerations at each step of the sequential evaluation. At steps two and three, the ALJ must determine the severity of the claimant's mental conditions and whether they meet or equal a listing. 20 C.F.R. § 404.1520a(d). Explicit findings as to the degree of limitation in four major mental work functions, referred to as the "paragraph B" criteria, must be articulated at this juncture. Id.

Plaintiff first contends that the ALJ provided inadequate findings in support of his application of the "special technique."  Contrary to Plaintiff's contention, however, the ALJ satisfied the regulatory requirements in determining whether Plaintiff's impairments met or equaled a listed impairment.  Specifically, the ALJ rated Plaintiff's degree of limitation in the four functional areas, finding that she had: "mild" limitations in activities of daily living and social functioning; "moderate" limitations in concentration, persistence, or pace; and no episodes of decompensation.   [T. 20]. Additionally, throughout his decision, the ALJ provided a thorough account of Plaintiff's activities of daily living, and the history and treatment of her mental impairments, including relevant examinations and clinical findings. [T. 17-19]. Plaintiff points to none that are inconsistent with his conclusions.  The ALJ further noted the opinions of the state agency psychologists, who found Plaintiff to have only mild limitations in activities of daily living and social functioning, moderate limitations in maintaining concentration, persistence and pace, and no episodes of decompensation, which are directly consistent with the ALJ's findings.  [T. 15].  The Court therefore concludes that the ALJ adequately explained his application of the "special technique" in evaluating the severity of Plaintiff's impairments.

Plaintiff next complains that the ALJ erred at step three by failing to evaluate whether she met or equaled the listings for anxiety or depression. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listings 12.04 and 12.06. The ALJ, however, explicitly considered Plaintiff's impairments, both singly and in combination, and concluded that Plaintiff's impairments did not meet or equal either of these listings because they did not satisfy the "paragraph B" criteria, which require at least two of the following: (1) marked restriction in activities of daily living; (2) marked difficulties in social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.04, 12.06. As noted above, the ALJ properly determined Plaintiff to have only mild limitations in activities of daily living and social functioning; a moderate limitation in concentration, persistence, or pace; and no episodes of decompensation. Therefore, his conclusion that the Plaintiff's impairments did not meet or equal a listing was not erroneous.

Plaintiff next argues that the ALJ erred by not directly including his "paragraph B" finding that Plaintiff had a moderate limitation in concentration, persistence or pace in his RFC determination and hypothetical to the VE. As Judge Howell recently explained, however:

> [W]hen an ALJ reaches steps four and five of the sequential evaluation process, he must assess the claimant's RFC, since the [paragraph B] factors do not indicate the work-related activities the claimant will have difficulty performing.  An adjudicator must, however, assess the claimant's mental RFC by translating the findings that were developed through the evaluation of the [paragraph B] factors into specific work-related limitations. Thus, the findings an ALJ makes as to the claimant's (1) activities of daily living, (2) social functioning, and (3) concentration, persistence, and pace need not be included in the ALJ's RFC assessment.

Grubby v. Astrue, 2010 WL 5553677 at *13 (W.D.N.C. Nov. 18, 2010) (citations omitted).  Here, the ALJ appropriately translated his paragraph B findings into work-related limitations in his RFC finding and hypothetical to the VE.  The ALJ specifically accounted for the moderate restriction in concentration, persistence, or pace by limiting Plaintiff to "simple, repetitive work."  [T. 20].  See Haga v. Astrue, 482 F.3d 1205, 1207-08 (10th Cir. 2007).  Plaintiff fails to demonstrate any greater limitations in concentration than are accounted for in this RFC finding.  Therefore, this assignment of error must fail.

Finally, Plaintiff asserts that the several sources of opinion evidence on mental impairments were weighed improperly at step four.  As detailed above, regulations dictate how medical opinion evidence shall be weighed.  20 C.F.R.

§ 404.1527(d). Even given numerous, somewhat inconsistent medical opinions on the same subject, such as the five present here, the Court "will not re-weigh conflicting evidence." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir.1996).

The ALJ began his analysis with a discussion of Plaintiff's history of mental impairments, which he correctly noted suggests a low level of severity. [T. 13, 15-18]. Consistent with that history, State Agency evaluator Dr. Fox found Plaintiff "capable of SRRTs [simple, routine, repetitive tasks]." [T. 311-12]. Dr. Skoll's RFC assessment also supports the ALJ's finding. [T. 358]. The ALJ's opinion was further consistent with some of consultative examiner Dr. Barnett's findings. The only finding of Dr. Barnett to which Plaintiff cites that is inconsistent with the ALJ's determination is that Plaintiff "appears to have marked deficiencies in concentration, persistence and pace resulting in a frequent failure to complete tasks in a timely manner." [T. 290]. This finding, however, is not supported by any evidence of record other than by Plaintiff's subjective statements. This statement by Dr. Barnett, therefore, does not constitute substantial evidence for any greater limitations than those found by the ALJ.

Plaintiff contends that the ALJ erred in affording significant weight to the opinion of Dr. Schacht, who testified at the administrative hearing. The transcript of Dr. Schacht's testimony contains numerous passages which were inaudible and thus could not be transcribed, thereby rendering his opinion effectively unreviewable by this Court. [T. 27-30] Thus, the Court cannot assess whether the attribution of weight to Dr. Schacht's testimony is supported by substantial evidence. Any erroneous reliance on the Schacht testimony, however, was rendered harmless by the presence of opinions from Drs. Fox and Skoll that support both the step three and four findings of the ALJ. Since their opinions are consistent with the longitudinal record, the ALJ's reliance thereon was not error.

Plaintiff argues that the ALJ should have ruled in a manner consistent with the opinions of Drs. Marcus and Hinnant, both one-time consultative examiners. The ALJ accurately noted, however, that Dr. Marcus's opinion was inconsistent with her own findings, and that both opinions relied heavily on subjective evidence from Plaintiff. [T. 19]. The ALJ therefore did not err in rejecting these opinions.

For all of these reasons, the Court determines that the ALJ did not err in his assessment of Plaintiff's mental impairments. These assignments of error must, therefore, be overruled.

## VII.    CONCLUSION

For the foregoing reasons, the Court concludes that the ALJ applied

the correct legal standards, and that there is substantial evidence to support

the ALJ's finding of no disability through the date of his decision.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Defendant's

Motion for Summary Judgment [Doc. 14] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Plaintiff's Motion for Summary

Judgment [Doc. 12] is **DENIED.**

A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: December 21, 2011

Martin Reidinger
United States District Judge